**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JAMES MARKETTE and BARBARA MARKETTE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC BANK, USA, NATIONAL ASSOCIATION, as | ) | |
| TRUSTEE FOR SG MORTGAGE SECURITIES TRUST | ) | |
| 2006-FRE1, ASSET-BACKED CERTIFICATES, SERIES | ) | |
| 2006-FRE1; ANSELMO LINDBERG OLIVER LLC, | ) | |
| f/k/a FREEDMAN ANSELMO LINDBERG LLC | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

**COMPLAINT**

**Introduction**

The Markettes are Illinois homeowners with a house located at 182 Howard Court, Fox

Lake, Illinois 60020.  During the last economic downturn, sometimes called "the Great

Recession," the Markettes fell behind on their mortgage payments.  The trustee of the securitized

mortgage trust that contains the Markettes' mortgage and their attorneys, instead of offering the

Markettes a non-foreclosure option as required by U.S. Treasury guidance, chose to file

foreclosure, employing unfair and deceptive methods of debt collection and commit consumer

fraud.

The Defendants' debt collection and foreclosure methodologies were part of a larger

scheme of securities and tax fraud that incented the Defendants to foreclose while eschewing the

loss mitigation alternatives that they, as mortgage lenders and their counsel, are required to

provide.

These foreclosure methodologies include recording and filing an assignment that

concealed the legal status and true owner of the mortgage loan; employing an inaccurate, untrue

name throughout the Markettes' foreclosure; filing a lawsuit, pleadings, and recording a *lis pendens* and assignment of mortgage in that inaccurate name; omitting the address of the foreclosing entity on the *lis pendens*; omitting the name of the purported MERS signer on the assignment; making false statements in pleadings; repeating the false statements before the state court; and concealing the fact that it had lost the original note in the case for over fourteen months.

## Jurisdiction and Venue

1. Federal question jurisdiction arises pursuant to 28 U.S.C. §1331, as many of Plaintiffs' claims arise under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

2. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505 *et seq.*

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district since Defendants can be found, have agents, or transact business in this district.

## Parties

4. Plaintiffs James Markette and Barbara Markette are natural persons who own a home in Fox Lake, Illinois.

5. Defendant HSBC BANK USA, NATIONAL ASSOCIATION ("HSBC"), is a national bank. HSBC is a subsidiary of HSBC USA, INC., which, in turn, is a subsidiary of HSBC NORTH AMERICA HOLDINGS, INC.  HSBC HOLDINGS PLC, based in London, England, is the parent company of HSBC NORTH AMERICA HOLDINGS, INC.

HSBC's corporate headquarters is located at 1800 Tysons Boulevard, McLean, Virginia. HSBC is the trustee of the securitized trust in this matter.

6. Defendant Anselmo Lindberg Oliver LLC ("Anselmo"), f/k/a Freedman Anselmo Lindberg LLC is a mortgage foreclosure and debt collection law firm, with its principal office located in Naperville, Illinois.

**Defendants' Obligations under the EESA/TARP/MHA**

7. Pursuant to the Emergency Economic Stabilization Act ("EESA") and the Troubled Assets Relief Program ("TARP"), the Secretary of Treasury issued guidance to lenders governing their obligations to service mortgages, including, but not limited to, the Making Home Affordable Program, referred to as "Program Guidance."

8. However, even prior to this emergency legislation, mortgage lenders/servicers such as Defendant HSBC were obligated to perform loss mitigation, in the form of loan modification, pre-foreclosure sales ("short sales") and executing Deeds in Lieu of Foreclosure. 24 C.F.R. § 203.501 *et seq*. (59 FR 50145, Sept. 30, 1994, as amended at 61 FR 35019, July 3, 1996); HUD Mortgagee Letter 2008-07 ("Treble Damages for Failure to Engage in Loss Mitigation") (Sept. 26, 2008).

9. Defendant HSBC is subject to the aforementioned Program Guidance.

10. Pursuant to the Program Guidance, "Each servicer (and any subservicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions)…" SD 09-01, pg. 12.

11. The Program Guidance also specifically incorporates Section 5 (a) of the Federal Trade Commission Act, as does the Illinois Consumer Fraud and Deceptive Businesses Practices Act.

12. At all times relevant, Program Guidance required Defendant to screen the loans it serviced for "imminent default." SD 09-01, pgs. 3-4.

13. Specifically, a "borrower that is current or less than 60 days delinquent who contacts the servicer for a modification, appears potentially eligible for a modification, and claims a hardship must be screened for imminent default." *Id*.

14. If the servicer determines that default is imminent, the servicer must apply the Net Present Value (NPV) test. *Id.*

15. On information and belief, which Plaintiffs verily believe, HSBC did not screen the loan for imminent default.

16. HSBC did not perform a NPV test.

17. Instead, HSBC referred Plaintiffs' loan to foreclosure in derogation of its loss mitigation obligations.

18. This is because HSBC had powerful economic incentives to forego loss mitigation in favor of foreclosure.

19. At all relevant times, Plaintiffs were qualified for non-foreclosure loss mitigation alternatives.

20. Plaintiffs are not seeking to avoid their mortgage obligation; rather, they are seeking a loss mitigation alternative to foreclosure.

**Defendants Employ a Misnomer in Complaint, Assignment, and *Lis Pendens***

21. Defendants filed a mortgage foreclosure complaint against the Plaintiffs, James and Barbara Markette, on August 27, 2010; the complaint stated that the foreclosure plaintiff was "HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1."

22. The foreclosure complaint prayed for a personal deficiency against the Markettes.

23. Also, allegedly on August 27, 2010, an assignment was executed in favor of HSBC by an unidentified purported MERS signer housed at the Anselmo law firm, and not recorded until September 23, 2010.

24. The assignment avers that MERS "has previously assigned and transferred to HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1 all title and interest…" in the Markette's note and mortgage. Emphasis supplied.

25. The assignment also avers "This instrument serves to memorialize the transfer of this mortgage loan which has previously taken place."

26. The assignment on behalf of "HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1" recites that it was "prepared by" the Anselmo firm.

27. Shortly after the filing of the complaint, on September 3, 2010, the Anselmo firm filed a *lis pendens* with the Lake County Recorder of Deeds with the same name, "HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1."

28. However, the *lis pendens* does not disclose the address of the foreclosing entity, as required by the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1218(ii) (a), which requires both the name and address of the "the persons making the claim or asserting the interest described in the notice."

29. The description of the foreclosing entity in the complaint, assignment and *lis pendens* was later conceded to be erroneous, or a "misnomer." See 735 ILCS §5/2-401(b).

30. The Markettes only learned of the misnomer upon the filing of Defendants' summary judgment "packet," a number of motions and affidavits required to obtain judgment of foreclosure in Illinois; the notice of filing indicates that the motions were sent for mailing on or about June 10, 2014.

31. However, even the foreclosing entity's name, as stated on the Motion to Correct Misnomer, does not faithfully recite the name of the Trust as reported on the Form 8k, as filed with the Securities Exchange Commission

32. The Motion to Correct Misnomer states, "The correct plaintiff name should be **HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1, Asset Backed Certificates Securities 2006-FRE1**." (**Emphasis in original**).

33. The Form 8K states that the Trust's name is, "SG Mortgage Securities Trust 2006-FRE1, Asset-Backed Certificates, Series 2006-FRE1."

### Losing the Original Note

34. Also at that time, sometime after mailing of the June 10, 2014 summary judgment packet, the Markettes learned of the fact that the foreclosing entity had lost the original note, because of a lost note affidavit in the packet.

35. The lost note affidavit was dated April 18, 2013, fourteen months prior to its presentment with the state court.

36. The lost note affidavit was signed by "Shane Stutzman" as "Vice President Loan Documentation" for "Wells Fargo Bank, N.A. DBA America's Servicing Company."

37. The lost note affidavit thus employed an alias, as, on information and belief, which Plaintiffs verily believe, Stutzman is employed by Lender Processing Servicers ("LPS"), a default management firm retained by Wells Fargo, the Servicer and Master Servicer of the Trust.

38. Earlier in the case, on February 28, 2012, while the Markettes were still proceeding *pro se,* the state court continued the foreclosure until March 13, 2012, ordering the Anselmo firm "to provide original note to the court" on behalf of its client.

39. The Defendants never provided the original note to the state court.

40. The Markettes subsequently obtained counsel, and propounded requests for production on or about April 3, 2012; Defendants filed discovery responses on or about June 1, 2012.

41. Defendants objected to each and every request except to refer the Markettes to the complaint and its attachments and to provide a payment history.

42. On September 21, 2012, the Markettes, through counsel, sent a letter pursuant to Illinois Rule 201(k) to Defendants to try to resolve the discovery dispute; Plaintiffs' attorney called the Anselmo firm on October 4, 2012 as well.

43. Markettes' counsel did not file a motion to compel.

44. While there were multiple discovery requests concerning custody and care of the note, the Defendants did not produce any document at that time revealing that they had lost the note.

**The Markettes try to Defend the Foreclosure**

45. On or about November 1, 2012, the Markettes filed an Amended Affirmative Defense alleging that HSBC failed to obtain an executed assignment prior to filing its complaint,

as the assignment was purportedly executed the same day the complaint was filed, August 27, 2010, and recorded September 23, 2010.

46. While the assignment avers that it is prepared by the Anselmo firm, it does not specify which attorney prepared it.

47. The assignment is signed by a purported MERS signer; however, the signature is illegible, and there is no printed name to identify the signer on the signature line.

48. The assignment contains an averment that the MERS "has previously assigned and transferred" the mortgage to HSBC.

49. The assignment was notarized by Denise M. Orlando of "State of Illinois, County of DuPage."

50. On information and belief, both Denise Orlando and the unnamed MERS signatory were employees of the Anselmo firm at that time.

51. The Markettes' Amended Affirmative Defense also averred, at paragraphs 4 and 5, that the state court had ordered the note produced and "Plaintiff has not produced the original note."

**HSBC and its Attorneys Respond**

52. On or about April 26, 2013, Defendants filed a reply to the Amended Affirmative Defense, captioned a "Response," in disregard of section 2-602 of the Illinois Code of Civil Procedure ("Code").

53. The Defendants' reply was not in numbered paragraphs, as required by 2-603(b) of the Code, and did not contain an explicit admission or denial of whether the note had been produced, as required by 2-610(a) & (c) of the Code: "Every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to

which it relates… Denials must not be evasive, but must fairly answer the substance of the allegation denied." 735 ILCS §5/2-603(b) & 2-610(a) & (c).

54. The April 2013 reply characterized HSBC as the "holder" of the note.

55. The UCC defines a "Holder" at Section 1- 201(b)(21):

> "Holder" means:
> (A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; or
> (B) the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession. 810 ILCS § 5/1-201(b)(21). (Quotation marks in original).

56. The Defendants' April 26, 2013 reply to the Amended Affirmative Defense repeatedly asserts its client's possession of the note; it states in relevant portions:

> "Plaintiff states that it is 'the holder of the Indebtedness based on the attached Note.'" "'The law is well established that possession of a promissory note, whether it be by payee or an endorsee, is prima facie evidence of ownership…'" "…the holder of a negotiable instrument indorsed in blank is presumed to be an innocent holder in due course."

57. The April 26, 2013 reply also talks about the note's endorsement, citing to Section 3-205(b) of the UCC:

> "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed. *An instrument indorsed in blank becomes payable to bearer and may be negotiated by transfer of possession alone.*" *(Emphasis supplied).*

This last, italicized sentence does not appear in 810 ILCS 5/3-205(b).

58. As described above, on June 10, 2014, sixteen months after being ordered to produce the original note, the Defendants sent for filing their summary judgment package.

59. Also, as noted above, the packet included a Lost Note Affidavit executed over a year earlier, on April 18, 2013.

9

60. Thus, Defendant HSBC and Defendant's attorneys, the Anselmo firm, had to know no later than April 18, 2013 that they were not the holder of the note; nevertheless, on April 26, 2013, a week later, they made representations premised on possession of the note, that Defendant mortgage lender was "presumed to be an innocent holder in due course" and in "possession of a promissory note."

61. Defendants never provided the Lost Note Affidavit as a seasonable supplement to discovery despite the requests that referred to custody, control, and management of the note.

62. Defendants thus withheld, despite the February 2012 order to produce the note, and despite the Markettes' outstanding discovery, the fact that they had lost the note.

63. Instead, Defendants waited until its summary judgment filing of June 10, 2014; and this, despite the fact that the Lost Note Affidavit was executed in April of 2013, over a fourteen months prior.

**Defendants' Continuing Misstatements**

64. Defendants, in the state court foreclosure, subsequently reversed course concerning their averments about being presumed to be a holder in due course.

65. On October 27, 2014, in their response to a motion for discovery sanctions, Defendants averred that "Plaintiff [HSBC] never alleged it is a Holder in Due Course and never claimed its standing or capacity to sue was dependent on such status," thus contradicting the earlier, April 26, 2013 filing.

66. Also in that document, Defendants represented that there was never a 201(k) conference to attempt to resolve discovery disputes.

10

67. The Markettes, in their reply filed on December 2, 2014, made it plain that there was a 201(k) conference, attaching a letter and phone records.

68. The Anselmo attorney attending the hearing on December 10, 2014, attorney Robert Deisinger, again represented to the state court judge that there was no 201(k) conference: "But the way to resolve that is with a 201(k) conference, and that didn't happen. There is no 201(k) conference."  Tr. 22:18-20.

69. Attorney Deisinger then repeated the representation that the note had a blank endorsement: "He [Markettes' counsel] is saying that, well, the note that is attached to your complaint that had a blank endorsement on it isn't good enough now the note has been lost."  COURT: "Are you saying this is a blank endorsement?" *** COURT: "It says HSBC Bank, USA National Association as trustee pay to the order of blank without recourse…"  *** DEISINGER: "No. I think I misspoke, Your Honor. I am sorry for that. I believe it is a special endorsement to HSBC."  Tr. 24:11-25:5.

70. Another Anselmo associate, John Blatt, attended on February 13, 2015; at that time, after reviewing the transcript, the trial court admonished the prior associate for his misrepresenting to the court that there was no 201(k) conference:

THE COURT: Mr. Kruger has effectively accused either you or your office of misrepresenting to the Court that there was no 201K. Where do you stand on that issue? MR. BLATT: I believe the transcript, I have to actually get to the specifics of it. I believe that Counsel said he didn't believe there was a 201K.

*** 

THE COURT: I have gone back while we are talking, while Counsel was arguing I have looked at the transcript. And Mr. Deisinger, D-E-I-S-I-N-G-E-R, was here on the date this motion was first argued which was 10th of December 2014. And what he said was, quote, the Defendant did issue discovery and we responded and some of those responses were objections. Now I take, I understand that he doesn't agree with some of those objections but the way to resolve that is with a 201K conference and that didn't happen. There is no 201K conference. So for that reason alone there shouldn't be any order of discovery sanctions. So he didn't say he didn't think that there was a 201K conference. He

didn't qualify it. He represented to the Court incorrectly that there was no 201K conference. That is unacceptable in my view. I told you that I am admonishing you and your firm that the next time you come into this courtroom on a motion to compel you should know in fact whether there was a 201K conference or not. And if you don't know then the only thing you should say to the Court is I don't know.

Tr. 34:6-13; 42:7-43:7.

71. Additionally, the Defendants' June 10, 2014 summary judgment packet also contained a Motion to Correct Misnomer. The motion avers that the correct name is "HSBC Bank, USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1, Asset Backed Certificate Securities 2006-FRE1"

72. In their combined response/reply to cross motions for summary judgment filed with the court on February 6, 2015, Defendants, through attorney Blatt stated, at page 7, "[Markettes] ignore the specific indorsement evidenced on the back of the last page of the Note, which transfers the interest in the Note to Plaintiff."

73. Thus, Defendants contradicted without explanation or correction the statements the same attorney made about blank endorsements in the April 26, 2013 reply, stating that the endorsement was in blank.

## COUNT I – FALSE, DECEPTIVE, OR MISLEADING REPRESENTATIONS OR MEANS IN CONNECTION WITH THE COLLECTION OF DEBT, 15 U.S.C. § 1692e, *et seq*.

74. Plaintiffs incorporate and re-allege paragraphs 1-73, as if fully set forth herein.

75. This Count lies against both Defendants HSBC and Anselmo.

76. Congress intended to exclude mortgage loan servicers from the Fair Debt Collection Practices Act ("FDCPA") in most circumstances. S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 USCCAN 1695, 1698.

77. However, Defendant HSBC Bank USA, N.A. is a "debt collector," pursuant to the FDCPA, if it acquired the Markettes' debt in default.

78. Defendants have obscured HSBC's status as a debt collector by drafting, recording, and filing a mortgage assignment omitting a date certain for the transfer of the debt.

79. Section 1692e prohibits any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e, *passim*.

80. Thus, the assignment itself is a misleading representation violating § 1692e.

81. Defendant Anselmo Firm is "debt collector" and/or enforcer of security interests pursuant to the FDCPA, 15 U.S.C. § 1692(a)(6), in that the firm routinely files foreclosure lawsuits on behalf of lenders including to collect debts asserted by lenders and enforce lender security interests.

82. As set forth above, the misrepresentations constituting violations of § 1692e, generally, by the Defendants include, *inter alia:*

    a. The misnomer;

    b. The assignment;

    c. Misrepresentations concerning possession of the note and the note's endorsement;

    d. Misrepresentations concerning the 201(k) conference; and

    e. The assignment, lost note affidavit, and other documents bearing the misnomer themselves.

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray this Honorable Court to enter judgment in their favor and against Defendants HSBC and ANSELMO and award:

a) Actual damages in an amount to be proven at trial;

b) Statutory damages as provided by 15 U.S.C. § 1692k;

c) Reasonable attorneys' fees and costs;

d) For any and all additional relief this Court deems reasonable and just.

## COUNT II – THE FALSE REPRESENTATION OR IMPLICATION THAT ANY INDIVIDUAL IS AN ATTORNEY OR THAT ANY COMMUNICATION IS FROM AN ATTORNEY, 15 U.S.C. § 1692e(3)

83. Plaintiffs incorporate and re-allege paragraphs 1-82, as if fully set forth herein.

84. This Count lies against Defendant Anselmo.

85. The FDCPA is to be generally applied; however, the statute lists sixteen illustrative enumerated examples in §1692e(1)-(16).

86. In addition to its general application, pursuant to §1692e(3), the statute prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

87. Documents filed in court proceedings that are signed by attorneys are communications from attorneys.

88. In order for a communication to state or imply that it is from an attorney, that attorney must have been meaningfully involved in the creation and drafting of that document, and that document may not overstate that attorney's involvement.

89. An attorney violates the FDCPA by filing a document signed by that attorney who was not meaningfully involved in preparing it.

90. Even if it is literally from an attorney, a communication will violate the FDCPA if it overstates that attorney's level of involvement in the communication.

91. In this case, the numerous errors, contradictions, and misstatements, including, but not limited to, statements about the misnomer, the endorsements, and the 201(k) conference indicate that the Defendant attorneys did not perform any meaningful review of the Markettes' file.

92. Therefore, Defendant Anselmo firm violated §1692e(3).

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray this Honorable Court to enter judgment in their favor and against Defendant ANSELMO and award:

   a) Actual damages in an amount to be proven at trial;

   b) Statutory damages as provided by 15 U.S.C. § 1692k;

   c) Reasonable attorneys' fees and costs;

   d) For any and all additional relief this Court deems reasonable and just.

## COUNT III – THE USE OF ANY BUSINESS, COMPANY, OR ORGANIZATION NAME OTHER THAN THE TRUE NAME OF THE DEBT COLLECTOR'S BUSINESS, COMPANY, OR ORGANIZATION, 15 U.S.C. § 1692e(14)

93. Plaintiffs incorporate and re-allege paragraphs 1-92, as if fully set forth herein.

94. This Count lies against both Defendants HSBC and Anselmo.

95. The Defendants filed the complaint, *lis pendens*, assignment, and other documents in this matter.

96. As evidenced by Defendants' Motion to Correct Misnomer, Defendants used a name other than the true name of the debt collector's name in the complaint, *lis pendens*, assignment, and other documents.

97. The full and correct name of the subject trust may have been learned upon slight inquiry.

98. The failure to "set forth in the body of his or her pleading the names of all parties for and against whom relief is sought thereby" ignores the most elemental principles of due process of law. 735 ILCS §2-401(c).

99. By concealing or failing to ascertain the foreclosing entity's name, Defendants violated 15 U.S.C. 1692e(14)

100.     In the alternative, the misnomer resulted from a lack of meaningful review of the file by the debt collector Defendants, and thus violated 15 U.S.C. § 1692e(3).

101.     Thus, the refusal or failure to name the foreclosing entity by its correct name violates the FDCPA.

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray this Honorable Court to enter judgment in their favor and against Defendants HSBC and ANSELMO and award:

   a) Actual damages in an amount to be proven at trial;

   b) Statutory damages as provided by 15 U.S.C. § 1692k;

   c) Reasonable attorneys' fees and costs;

   d) For any and all additional relief this Court deems reasonable and just.

### COUNT IV – THE FALSE REPRESENTATION OF THE CHARACTER, AMOUNT, OR LEGAL STATUS OF ANY DEBT, 15 U.S.C. § 1692e(2)(A)

102.     Plaintiffs incorporate and re-allege paragraphs 1-101, as if fully set forth herein.

103.     This Count lies against both Defendants HSBC and Anselmo.

104.     It is a violation of the FDCPA to misrepresent the character or legal status of a debt.

105.    Defendant Anselmo law firm, with the knowledge and assent of HSBC, deliberately misrepresented the character and legal status of a debt by failing and refusing to give a date certain for its assignment.

106.    The assignment represents a transfer of ownership, and a "meeting of the minds;" as such, it must have occurred on a date certain.

107.    The failure and refusal to provide a date certain on which the note and mortgage is transferred has material consequences for the parties, and misstates the character and the legal status of the note and mortgage in several ways.

108.    Therefore, the Defendants violated§ 1692e(2)(A).

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray this Honorable Court to enter judgment in their favor and against Defendants HSBC and ANSELMO and award:

   a)  Actual damages in an amount to be proven at trial;

   b)  Statutory damages as provided by 15 U.S.C. § 1692k;

   c)  Reasonable attorneys' fees and costs;

   d)  For any and all additional relief this Court deems reasonable and just.

### COUNT V – UNFAIR PRACTICES, 15 U.S.C. § 1692f

109.    Plaintiffs incorporate and re-allege paragraphs 1-108, as if fully set forth herein.

110.    This Count lies against both Defendants HSBC and Anselmo.

111.    A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

112.    All of the aforesaid acts of Defendants were "unfair or unconscionable means" of collecting a debt.

113.     Therefore, Defendants violated § 1692f.

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray this Honorable Court to enter judgment in their favor and against Defendants HSBC and ANSELMO and award:

a)   Actual damages in an amount to be proven at trial;

b)   Statutory damages as provided by 15 U.S.C. § 1692k;

c)   Reasonable attorneys' fees and costs;

d)   For any and all additional relief this Court deems reasonable and just.

**COUNT VI – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, *et seq*.**

114.     Plaintiffs incorporate and re-allege paragraphs 1-113, as if fully set forth herein.

115.     This Count lies against Defendant HSBC.

116.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*., ("ICFA") forbids unfair or deceptive conduct in the course of commerce, and states in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.  815 ILCS 505/2

117.     The terms "unfair" and "deceptive," as used in the ICFA, are disjunctive, not conjunctive; in other words, a practice may violate the prohibition against unfairness while not violating the prohibition against deception, and vice-versa.

118.     Three considerations guide an Illinois court's determination of whether conduct is

unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2)

whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes

substantial injury to consumers." *Robinson v. Toyota Motor Credit*, 266 Ill.Dec. 879, 775

N.E.2d at 961 (2002).

119.     A court may find unfairness even if the claim does not satisfy all three criteria.

*Id*.  For example, a "practice may be unfair because of the degree to which it meets one of

the criteria or because to a lesser extent it meets all three."  *Id*.

120.     A court addressing an ICFA unfairness claim must consider whether the

challenged practice, "offends public policy as established by statutes, the common law or

otherwise, or, in other words, whether it is at least within the penumbra of some

established concept of unfairness."  *Boyd v. U.S. Bank*, No. 10 C 3367 (N.D. Ill., April

12, 2011) (citing *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. 1991)).

121.     Defendant HSBC committed unfair and deceptive acts.

122.     The HAMP Program Guidance represents an established concept of fairness that

is cognizable under the ICFA.

123.     Defendant HSBC agreed to comply with HAMP's requirement to perform loan

modifications and other foreclosure prevention services described in the Program

Guidance.

124.     These HAMP guidelines, which are issued by the Treasury Department, require

financial institutions to, inter alia:

    a.  Collect financial and other personal information from homeowners to evaluate
        whether such homeowners are eligible for loan modifications under HAMP;

    b.   Use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for HAMP, including in-person contacts at the servicer's discretion;

    c.   Provide modified loans with reduced payment amounts as calculated per a mandated formula, known as the "loss mitigation waterfall," which is effective for a three-month trial period for borrowers that are eligible for modification;

    d.   Provide permanent loan modifications to those homeowners who successfully complete the three-month trial period; and

    e.   Provide written notices to every mortgage borrower that has been evaluated for a HAMP loan modification to inform the borrowers whether they were found eligible. If ineligible, the financial institution is required to inform the borrower of the reasons for his or her ineligibility.

**Why Servicers Foreclose When They Should Modify**

125.    According to Why Servicers Foreclose When they Should Modify, "servicers remain largely unaccountable for their dismal performance in making loan modifications." "Servicers have [the following] four main sources of income, listed in descending order of importance:

    a.   The monthly servicing fee, a fixed percentage of the unpaid principal balance of the loans in the pool;

    b.   Fees charged to borrowers in default, including late fees and "process management fees;

    c.   Float income, or interest income from the time between when the servicer collects the payment from the borrower and when it turns the payment over to the mortgage owners; and

    d.   Income from investment interests in the pool of mortgage loans that the servicer is servicing.

126.    Because of this business model, it is simply more profitable for servicers to have borrowers in default and foreclosure than to offer them permanent HAMP loan modifications.

127.     Thus, instead of acting fairly and offering HAMP loans to those that qualified, Defendant has sought to circumvent these expressions of public policy by failing to consider the Markettes for a modification or other foreclosure prevention alternatives.

**HSBC's Noncompliance with its April 13, 2011 OCC Consent Order**

128.     The Federal Reserve, Office of the Comptroller of the Currency, and Office of Thrift Supervision, in response to the mortgage lending catastrophe, conducted an Interagency Review of residential real estate mortgage foreclosure processes of the major lenders, including HSBC, issuing a report in April of 2011.

129.     As a result of findings in the Interagency Review, the agencies, including the Office of Comptroller of the Currency ("OCC") issued Consent Orders on April 13, 2011. See April 13, 2011 Consent Order, at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47.html.

130.     The OCC, in Article I of the Order, "identified certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings." *Id*. at pg. 1.

131.     On April 13, 2011, the major lenders, including Defendant HSBC, executed a "Stipulation and Consent to the Issuance of a Consent Order" that was accepted by the Comptroller. *Id*.

132.     In doing so, HSBC averred that it "ha[d] committed to taking all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the OCC, and to enhance the Bank's residential mortgage servicing and foreclosure processes." *Id*.

133.    The Comptroller found that HSBC, "engaged in unsafe and unsound banking practices," in that it, inter alia:

   a.  failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes; Art. I, sec. 2(d);

   b.  failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; Art. I, sec. 2(e); and

   c.  failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services. Art. I, sec. 2(f).  Id. at pg. 3.

134.    As a part of the Consent Order, OCC required HSBC to agree to, *inter alia*:

   (a) processes to ensure that all mortgage assignments and endorsements with respect to mortgage loans serviced or owned by the Bank out of MERS' name are executed only by a certifying officer authorized by MERS and approved by the Bank (page 13);

                                    ***

   (e) processes to ensure that the Bank has properly documented ownership of the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the action (as a result of agency or other similar status) at all stages of foreclosure and bankruptcy litigation, including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security, and lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership (pages 7-8);

   (f) processes to ensure that a clear and auditable trail exists for all factual information contained in each affidavit or declaration, in support of each of the charges that are listed, including whether the amount is chargeable to the borrower and/or claimable by the investor (page 8);

   (b) measures to ensure that all original records transferred from the Bank to Third-Party Providers (including the originals of promissory notes and mortgage documents) remain within the custody and control of the Third-Party Provider (unless filed with the appropriate court or the loan is otherwise transferred to another party), and are returned to the Bank or designated custodians at the conclusion of the performed service, along with all other documents necessary for the Bank's files, and that the Bank retains imaged copies of significant documents sent to Third-Party Providers (pages 10-11);

   (c) measures to ensure the accuracy of all documents filed or otherwise utilized on behalf of the Bank or the owners of mortgages in any judicial or non-judicial

foreclosure proceeding, related bankruptcy proceeding, or in other foreclosure-related litigation, including, but not limited to, documentation sufficient to establish ownership of the promissory note and/or right to foreclose at the time the foreclosure action is commenced (page 11);

135.     The pronouncements of the Consent Decree, issued after some, but not all, of the events heretofore mentioned occurred, is in harmony with and indicative of Defendant HSBC's non-compliance with mortgage servicing rules.

136.     Defendant HSBC's concealment of its MERS' signer's name is indicative of its non-compliance.

137.     Defendant HSBC's utilization of a misnomer is indicative with its non-compliance.

138.     Defendant HSBC's utilization of an alias lost note affiant, or rather concealment of the true employing entity of the affiant, is indicative of its non-compliance.

139.     Defendant HSBC's utilization of a false and inflated title of the signer is indicative of its non-compliance.

140.     Defendant HSBC Bank has heretofore failed to remediate its foreclosure processes as it stated it would in the Consent Order.

**HSBC's Noncompliance with 26 U.S.C. § 860A-806(G),
Real Estate Mortgage Investment Conduits**

141.     Defendant HSBC's foreclosure methodologies are motivated, in part, by its incentive to preserve the status of the subject trust as a Real Estate Mortgage Investment Conduit, or "REMIC," under the Internal Revenue Code.

142.     Pursuant to the Internal Revenue Code, securitized mortgage trusts are limited on how and when they can acquire mortgages.

143.    In most cases, a REMIC must acquire its mortgages within three months of the Trust's start-up.  26 USC §860G (a)(3)(ii) & (9).

144.    A "qualified" mortgage is an obligation that is principally secured by an interest in real property. 26 USC §860G (a)(3)(A).

145.    Substantially all of the Trust's assets must be qualified mortgages.  26 USC §860D (a)(4).

146.    This has been interpreted to mean only a *de minimis* amount of the Trust's assets are not qualified. Treas. Reg. 1.860D-1(b)(3)(i).

147.    Whether an obligation is secured by an interest in real property is dependent on the delivery and possession of the note from the originator to the Trust.

148.    Thus, in order to be a REMIC and avoid a 100% tax penalty, the Trust must satisfy both a timing requirement and a definitional requirement.

149.    The assignment in this case consciously avoids addressing the topic of <u>when</u> the note was delivered to the Trust vis-à-vis the Trustee or custodian.

150.    On information and belief, which Plaintiffs verily believe, Defendant HSBC did not comply with the timing requirement.

151.    On information and belief, which Plaintiffs verily believe, Defendant HSBC did not insure that the REMIC, the Trust in this case, complied with the definitional requirement.

152.    Defendant HSBC Bank USA, N.A., has thus committed unfair and deceptive acts, including but not limited to its non-compliance with EESA/TARP/HAMP, its Consent Order, and the Internal Revenue Code, and the unfair and deceptive acts continue to this day.

## ICFA Recitals

153.     HSBC's conduct as set forth herein occurred in the course of trade or commerce.

154.     HSBC's conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers.

155.     The Markettes, as Plaintiffs, are consumers.

156.     Defendant HSBC made statements and omissions knowingly and willfully and with the intent that Plaintiffs as consumers would accept and rely on them.

157.     Defendant HSBC's conduct was likely to induce reliance and to create confusion and misunderstanding.

158.     Plaintiffs did rely on Defendant's statements and omissions.

159.     Defendant's conduct as set forth herein is deceptive, unfair, and unconscionable.

160.     Defendant's conduct as set forth herein is not required, permitted, or authorized by any state or federal law.

161.     Defendant's conduct as set forth herein violates established public policy, and the harms caused to consumers greatly outweigh any benefits associated with that conduct.

162.     Defendant's conduct as set forth herein proximately caused injury in fact to the property of Plaintiffs.

163.     Defendant's wrongful conduct facilitated its wrongful foreclosure methodologies and deprived the Markettes of a loss mitigation alternative to foreclosure.

WHEREFORE, Plaintiffs JAMES and BARBARA MARKETTE respectfully pray for the following relief against Defendant HSBC:

     a)  Injunctive and/or declaratory relief as appropriate;

b) Actual and punitive damages under the Illinois Consumer Fraud Act, 815 Ill.

   Comp. Stat. 505/10;

c) Reasonable attorneys' fees and costs of this proceeding; and

d) For any and all additional relief this Court deems reasonable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury.

Respectfully submitted,

JAMES MARKETTE and BARBARA MARKETTE

By and through their counsel,

*/s/ Christopher Kruger*
Christopher Kruger

Christopher Kruger #6281923
Werner Gruber #6304518
KRUGER & GRUBER, LLP
500 N. Michigan Ave. Suite 600
Chicago, IL 60611
Phone: 773-663-4949
Fax: 312-268-7064