**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES MARKETTE and BARBARA MARKETTE, | ) ) ) | |
| Plaintiffs, | ) ) | No. 15-cv-05271 |
| v. | ) ) | Judge Andrea R. Wood |
| HSBC BANK, USA, NATIONAL ASSOCIATION and ANSELMO LINDBERG OLIVER LLC, | ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

During the recession caused by the financial crisis of 2008, Plaintiffs James and Barbara

Markette fell behind on their residential mortgage payments. As a result, Defendant HSBC Bank

USA, National Association ("HSBC"), as trustee of the securitized trust that includes the

Markette's mortgage, brought a foreclosure action in state court. Plaintiffs claim that HSBC and

its counsel, Defendant Anselmo Lindberg Oliver LLC ("ALO"), employed unfair and deceptive

methods of debt collection in connection with the foreclosure litigation. The Markettes' six-count

complaint asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),

815 ILCS § 505 *et seq.* Now before the Court are Defendants' motions to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6) (Dkt. Nos. 29 & 35). For the reasons

explained below, both motions are granted.

---

[1] Presumably, the reference to Rule 12(b)(1) in HSBC's motion to dismiss relates to the argument, discussed below, that if the federal claims against it are dismissed, the Court should dismiss any remaining state law cause of action for lack of subject-matter jurisdiction. Seventh Circuit case law is clear, however, that a district court does not automatically lose supplemental jurisdiction once all federal claims in a

**BACKGROUND**

The following facts are taken from Plaintiffs' complaint.[2] On August 27, 2010, Defendants filed a mortgage foreclosure complaint against the Markettes seeking a personal deficiency judgment. (Compl. ¶¶ 21–22, Dkt. No. 1.) The same day, an assignment was executed stating that Mortgage Electronic Registration Systems, Inc. ("MERS") had "previously assigned and transferred to [HSBC] all title and interest" in the Markettes' mortgage loan. (*Id.* ¶¶ 23–24.) The assignment further states that "[t]his instrument serves to memorialize the transfer of this mortgage loan which has previously taken place." (*Id.* ¶ 25.) The assignment was prepared by ALO and recorded on September 23, 2010. (*Id.* ¶¶ 23, 26.) Shortly after filing the foreclosure complaint and preparing the assignment, ALO filed a *lis pendens* with the Lake County Recorder of Deeds. (*Id.* ¶ 27.)[3]

It was later discovered that the description of HSBC in the complaint, assignment, and *lis pendens*—"HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1"—was a misnomer. (*Id.* ¶ 29.) Defendants subsequently filed a motion to correct the misnomer, stating that "[t]he correct plaintiff name should be HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1, Asset Backed Certificates

---

lawsuit has been dismissed. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999); s*ee also Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (noting that supplemental jurisdiction persists even if all the claims giving rise to original jurisdiction have been dismissed). Rather, the district court may decline to exercise that jurisdiction. Therefore, Rule 12(b)(1) does not provide a basis for dismissal here, and HSBC's motion, like ALO's motion, will be treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

[2] For purposes of deciding the instant motions, the Court accepts as true all well-pleaded factual allegations set forth in the complaint and views them in the light most favorable to Plaintiffs. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

[3] Plaintiffs allege that the *lis pendens* does not contain HSBC's address as required by the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1218(ii)(a). (Compl. ¶¶ 27–28, Dkt. No. 1.)

Securities 2006-FRE1." (*Id.* ¶¶ 31–32.) The Markettes did not learn of the misnomer until June 2014, when Defendants filed the motion to correct it along with their motion for summary judgment in the foreclosure action. (*Id.* ¶ 30.) Plaintiffs claim that the motion to correct still contains a misnomer, as the actual name of the trust as reported on the Form 8-K filed with the Securities and Exchange Commission ("SEC") is "SG Mortgage Securities Trust 2006-FRE1, Asset-Backed Certificates, Series 2006-FRE1." (*Id.* ¶¶ 31, 33.)

In February 2012, the state court in the foreclosure action ordered ALO to provide the original mortgage note. (*Id.* ¶ 38.) Defendants failed to do so and, despite multiple discovery requests concerning the custody and care of the note, Defendants did not reveal that they had in fact lost it. (*Id.* ¶¶ 38–39, 44.) The Markettes did not learn that the note had been lost until they received Defendants' summary judgment papers, which included a lost-note affidavit dated April 18, 2013. (*Id.* ¶¶ 34–35.)

Then, in or around November 2012, the Markettes filed an amended affirmative defense in the foreclosure action alleging that HSBC had failed to obtain an executed assignment prior to filing its complaint (as the assignment was executed on the same day the complaint was filed) (*Id.* ¶ 45.) In their amended affirmative defense, the Markettes also alleged that Defendants had failed to produce the original note despite the state court's order to do so. (*Id.* ¶ 51.) Defendants' reply to the amended affirmative defense, filed in late April 2013, did not contain an explicit admission or denial as to whether the note had been produced, but it characterized HSBC as the holder of the note and repeatedly asserted HSBC's possession of the note. (*Id.* ¶¶ 52–56.)[4] In addition, the reply represented that the note's endorsement was blank, when in reality the note had a special

---

[4] The Markettes allege that Defendants' reply to their amended affirmative defense was incorrectly captioned as a response, was not formatted in numbered paragraphs, and did not contain an explicit admission or denial as to each of the allegations, all in violation of the Illinois Code of Civil Procedure. (*Id.* ¶¶ 52–53.)

endorsement to HSBC. (*Id.* ¶¶ 57, 69.)

After Defendants filed for summary judgment in the foreclosure action, the Markettes filed a motion for discovery sanctions. (*Id.* ¶ 65.) In their response to that motion, Defendants contradicted certain statements made in their April 2013 filing, including those relating to HSBC's status as a holder of the note and the note's endorsement. (*Id.* ¶¶ 64–65, 72–73.) The Markettes allege that Defendants' response also incorrectly stated that the parties had never had an Illinois Rule 201(k) conference to attempt to resolve their discovery disputes. (*Id.* ¶¶ 66–67.) During a December 2014 hearing, ALO again misrepresented that there had been no Rule 201(k) conference. (*Id.* ¶ 68.) The state court judge later admonished ALO for that misrepresentation. (*Id.* ¶ 70.)

The Markettes subsequently brought this lawsuit in federal court, alleging that certain of Defendants' conduct in connection with the foreclosure litigation violated the FDCPA and the ICFA. First, Plaintiffs allege that both Defendants violated § 1692e of the FDCPA, which broadly prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In particular, the Markettes allege that the following misrepresentations constitute violations of § 1692e: (1) the misnomer, (2) the assignment, (3) misrepresentations concerning possession of the note and the note's endorsement, (4) misrepresentations concerning the Rule 201(k) conference, and (5) the assignment, lost-note affidavit, and other documents bearing the misnomer themselves.

In Count II of their complaint, the Markettes allege that ALO violated the FDCPA's specific prohibition against any "false representation or implication that any individual is an

attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).[5] According to

Plaintiffs, the errors, contradictions, and misstatements in Defendants' foreclosure filings indicate

that ALO was not meaningfully involved in preparing them, and the attorneys' signing and filing

of those documents thus constitutes a false representation or implication that they were "from an

attorney."

In Count III, the Markettes allege that Defendants' use of a name other than the true name

of the subject trust in the complaint, *lis pendens*, and assignment constitutes a violation of

§ 1692e(14) of the FDCPA, which prohibits "the use of any business, company, or organization

name other than the true name of the debt collector's business, company, or organization." 15

U.S.C. § 1692e(14).

Count IV alleges that Defendants deliberately misrepresented the character and legal status

of the Markettes' mortgage by failing to give a certain date for its assignment, in violation of

§ 1692e(2)(A) of the FDCPA, which prohibits the false representation of the character, amount, or

legal status of any debt. According to the Markettes, Defendants' refusal to provide a certain date

on which the mortgage was transferred misstates the character and legal status of the debt in

several ways and has material consequences for the parties.

In Count V, Plaintiffs claim that Defendants' conduct as alleged in Counts I through IV

also constitutes a violation of § 1692f of the FDCPA, which prohibits debt collectors from using

any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Lastly, in Count VI, the Markettes claim that HSBC committed unfair and deceptive acts

in violation of the ICFA. First, they allege that HSBC failed to comply with certain loan

---

[5] Sections 1692e(1)–(16) of the FDCPA set forth 16 non-exclusive examples of conduct that would
constitute a violation of § 1692e's broad prohibition on false, deceptive, or misleading representations or
means. *See Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002).

modification and foreclosure prevention requirements as set forth in the Home Affordable Modification Program Guidelines ("HAMP Guidelines") issued by the U.S. Department of the Treasury. Specifically, the Markettes allege that HSBC did not screen their loan for imminent default or apply a net present value test prior to filing the foreclosure action, as required by the Guidelines. Second, Plaintiffs allege that HSBC failed to comply with an April 2011 consent order issued by the Treasury Department's Office of the Comptroller of the Currency ("OCC"). Finally, the Markettes assert that HSBC did not comply with the Internal Revenue Code's requirements for real estate mortgage investment conduits ("REMICs"). According to Plaintiffs, HSBC's non-compliance with the HAMP Guidelines, OCC, and Internal Revenue Code is indicative of unfair and deceptive acts prohibited by the ICFA.

In its motion to dismiss, ALO contends that Plaintiffs' claims against it fail because the FDCPA does not provide a federal remedy for violations of state court procedural rules and is not to be used as a method to regulate ongoing state court litigation. According to ALO, the Markettes raised all of the present issues in their cross-motion for summary judgment in the foreclosure action and they should not be permitted to raise the same issues again in federal court. In addition, ALO contends that the § 1692e claims must be dismissed because the alleged misrepresentations were not material. Finally, ALO asserts that all of its alleged wrongdoing occurred outside of the FDCPA's one-year statute of limitations.

HSBC argues that Counts I, III, IV, and V fail to state a claim against it because Plaintiffs do not and cannot allege that HSBC qualifies as a "debt collector" within the meaning of the FDCPA. According to HSBC, the FDCPA claims should therefore be dismissed with prejudice, and the Court should decline to exercise supplemental jurisdiction over the remaining state law claim. Alternatively, HSBC contends that Count VI should be dismissed because the Markettes

have failed to allege a timely, plausible claim under the ICFA.

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). In other words, "[a] complaint must allege facts to support a cause of action's basic elements." *Id.*

"When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet that standard, the plaintiff ordinarily must "describe[e] the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)

(quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). However, when an ICFA claim alleges an unfair practice, the relaxed pleading standards of Rule 8 govern. *Pirelli*, 631 F.3d at 446.

## I. FDCPA Claims Against ALO

As described above, Plaintiffs' FDCPA claims against ALO are premised on (1) alleged misrepresentations relating to the misnomer, the assignment, possession of the note and the note's endorsement, the Rule 201(k) conference, and the documents bearing the misnomer themselves; (2) alleged errors, contradictions, and misstatements in ALO's filings in the foreclosure litigation; (3) Defendants' alleged use of a name other than the true name of the subject trust in the complaint, *lis pendens*, assignment, and other documents; and (4) Defendants' alleged failure to provide a certain date on which the Markettes' mortgage was assigned to HSBC.

As an initial matter, the Seventh Circuit has made clear that the FDCPA "regulates communications directed at the consumer"—"it does not extend to communications that are allegedly meant to mislead the judge in a state court action." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 939 (7th Cir. 2011). Therefore, Plaintiffs' FDCPA claims are dismissed to the extent they are based on allegations of misrepresentations made not to them but to the judge in the foreclosure action—namely, the allegation that Defendants lied about whether the parties had a Rule 201(k) conference.

In its motion to dismiss, ALO contends that the Markettes seek to use the FDCPA as an enforcement mechanism for alleged state law violations—specifically, violations of the Illinois Mortgage Foreclosure Law and the Illinois Rules of Civil Procedure. ALO is correct that the Seventh Circuit has rejected such an approach. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473–74 (7th Cir. 2007) (defendant law firm's alleged violation of

federal and state laws exempting Social Security benefits from attachment did not support a
§ 1692f claim). However, the primary case relied upon by ALO, *Beler v. Blatt, Hasenmiller,*
*Leibsker & Moore, LLC*, does not preclude FDCPA claims premised upon alleged
misrepresentations made in connection with state court litigation. The plaintiff in *Beler* claimed,
in part, that the complaint filed by the defendant law firm in a state court collection suit violated
§ 1692e of the FDCPA because its description of certain contracts was not clear enough to enable
an unsophisticated consumer to understand the relationship among merchant, transaction,
processor, and creditor. *Beler*, 480 F.3d at 472. The court rejected that claim, and in so doing,
drew a line between clarity and deception:

> Section 1692e does not require clarity in all writings. What it says is that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." A rule against trickery differs from a command to use plain English and write at a sixth-grade level. Beler does not contend that the complaint was deceptive and that the Law Firm set out to trick her into paying money she does not owe, or to mislead her into paying the wrong person. Whatever shorthand appeared in the complaint . . . was harmless rather than an effort to lead anyone astray.

*Id.* at 473.

In the wake of *Beler*, a number of courts in this District have allowed claims involving
alleged misrepresentations made in the course of a debt collection or foreclosure action. *See, e.g.,*
*Guevara v. Midland Funding NCC-2 Corp.*, No. 07 C 5858, 2008 WL 4865550, at *5 (N.D. Ill.
June 20, 2008) (noting that "*Beler* involved allegations regarding the **content** of a state complaint
and actions that potentially violated other federal statutes **but not the FDCPA itself**; it did not
deal with allegations of misrepresentations in pleadings") (emphases in original); *Berg v. Blatt,*
*Hasenmiller, Leibsker & Moore LLC*, No. 07 C 4887, 2009 WL 901011, at *5 (N.D. Ill. Mar. 31,
2009); *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 544 (N.D. Ill. 2012); *Kabir*
*v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *4-5 (N.D. Ill. Aug.

10, 2015); *Speights-Carnegie v. Blackstone Condo. Ass'n*, No. 15 C 3781, 2016 WL 2644864, at *5 (N.D. Ill. May 10, 2016) (noting that "[a]lthough the Seventh Circuit has expressed skepticism of such claims, courts in this District have nonetheless repeatedly held that where, as here, the allegations appear to fit precisely into the FDCPA's prohibition against misrepresenting the character, amount, or legal status of any debt, such state court complaints are covered by the statute") (internal citation and quotation marks omitted).

The Markettes base their FDCPA claims on a host of alleged misrepresentations—not mere lack of clarity or violations of other state or federal laws.[6] Their allegations of false, deceptive, and misleading representations remove their claim from the ambit of claims foreclosed by *Beler*. But even accepting their allegations as true, Plaintiffs' claims fall short because the Seventh Circuit has made clear that more than literal falsity is required. *See Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 646 (7th Cir. 2009) ("[The plaintiff] can't win simply by showing that [the defendant's] use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer."). The Seventh Circuit has also imposed a materiality requirement. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."); *see also Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("For [§ 1692e] claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process—that is, whether they represent the kind of conduct the Act was intended to eliminate."); *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) ("[A] false or

---

[6] Contrary to ALO's suggestion, Plaintiffs' claims are not transformed by the mere fact that certain of the alleged misrepresentations may have violated Illinois law.

misleading statement is only actionable under the FDCPA if it is material, meaning that it has the ability to influence a consumer's decision.") (internal citation, quotation marks, and emphasis omitted).

According to ALO, none of its alleged misrepresentations were material to the Markettes' decisions in the foreclosure action because they do not dispute that they owe the debt—in other words, they were not misled as to the validity of the debt, the entity seeking to enforce the debt, or the debt's enforceability. Plaintiffs respond that "ALO's misrepresentations in the [a]ssignment, false pleadings, and concealment of the lost note and misnomer caused Plaintiffs to defend against unfounded allegations, which facilitated HSBC's derogation of its duty to provide loss mitigation alternatives and increased Plaintiffs' indebtedness." (Resp. to Mots. to Dismiss at 13, Dkt. No. 40.) It is clear from Plaintiffs' argument and the allegations in the complaint that the Markettes do not dispute that they owe the debt or that they owe it to HSBC; nor do they suggest that they owe less than the amount claimed in the foreclosure action. Rather, Plaintiffs' primary concern is that they were denied loss mitigation alternatives to disclosure. Yet it is unclear how any of the alleged misrepresentations might have affected the loss mitigation process or the Markettes' decision-making with respect to the foreclosure litigation.

While Plaintiffs are correct that materiality is generally a determination reserved for summary judgment, federal pleading standards require that a complaint contain allegations supporting a plausible claim to relief. *See Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013) ("[Plaintiff's] suit may not proceed if his allegations do not plausibly describe a debt collection practice that was unfair or unconscionable with respect to him.") (in the context of a § 1692f claim); *Manlapaz v. Unifund CCR Partners*, No. 08 C 6524, 2009 WL 3015166, at *5 (N.D. Ill. Sept. 15, 2009) (dismissing an FDCPA claim based on a technically false statement that

would not mislead the unsophisticated consumer and was unlikely to affect a consumer's reaction). As it stands, the Markettes have failed to plead any facts to suggest that Defendants' alleged misrepresentations impacted their rights or influenced their decisions. Nor have they shown how the allegedly false statements made any difference to the substantive outcome of the state court proceedings. The complaint's only allegation relating to materiality is that Defendants' "failure and refusal to provide a date certain on which the note and mortgage [was] transferred has material consequences for the parties[.]" (Compl. ¶ 107, Dkt. No. 1.)  The Court need not accept that legal conclusion as true and is therefore left to speculate as to what the material consequences—if any—might be. *See Velazquez v. Fair Collections & Outsourcing, Inc.*, No. 12 C 04209, 2013 WL 4659564, at *8 (N.D. Ill. Aug. 30, 2013) ("[Plaintiff] did not explain how the use of aliases by the collection agents was a material misrepresentation, and the bare allegation that the practice violates § 1692e is just a formulaic allegation of a legal conclusion, and is not enough to survive the dismissal motion."). Nonetheless, the Court will proceed to address the materiality of each of the alleged misrepresentations in turn.

The misnomer is at best a hyper-technical violation of the FDCPA's prohibition on false statements. The complaint, assignment, and *lis pendens* named the creditor as "HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust." Plaintiffs complain of what can only be characterized as a minor error in the name of the subject trust—"Trust 2006-FRE1" (the description used in the complaint, assignment, and *lis pendens*) versus "Trust 2006-FRE1, Asset Backed Certificates Securities 2006-FRE1" (the description used in the motion to correct misnomer) versus "Trust 2006-FRE1, Asset-Backed Certificates, Series 2006-FRE1" (which Plaintiffs claim is the actual name of the trust as reported in SEC filings). Nowhere do the Markettes make clear what they would have done differently if the complaint, assignment, and *lis*

*pendens* had contained the correct name of the trust. There is no indication that this technical

falsity misled them in any way, impacted their ability to negotiate loss mitigation alternatives, or

otherwise affected the outcome of the foreclosure action.

With respect to the assignment, based on the state court record it appears that the mortgage

was assigned to HSBC in 2006—years prior to the filing of the foreclosure action.[7] In any event,

Plaintiffs have failed to make clear the materiality of Defendants' alleged failure to include in the

assignment or otherwise a certain date on which the debt was transferred. Perhaps there are facts

to suggest that the Markettes were meaningfully deceived by that failure, that the amount of their

indebtedness was affected, or that the misrepresentation somehow allowed HSBC to deny them

loss mitigation alternatives. But those facts are not in the complaint, and it is not the Court's

responsibility to attempt to connect the dots on Plaintiffs' behalf.

The Markettes' allegations with respect to ALO's handling of the lost note at best suggest

questionable litigation practices. Defendants' failure to reveal that they had lost the note despite

discovery requests concerning the note's custody and care, and their failure to produce the note

despite the state court's order to do so, may well justify sanctions or an award of fees and costs

for discovery misconduct (indeed, Plaintiffs' complaint notes that they filed a motion for

discovery sanctions in the state court action). But that does not mean that such conduct constitutes

a violation of the FDCPA. If such were the case, any misconduct in connection with state court

debt collection or foreclosure litigation might give rise to a separate federal cause of action. That

would put federal courts in the position of regulating state court litigation, and such is not their

function. Further, Plaintiffs do not point to any decisions they would have made or actions they

---

[7] The Court may take judicial notice of proceedings in other courts—both federal and state—where the proceedings are directly related to the matters at issue. *See U.S. v. Hope*, 906 F.2d 254, 260 n.1 (7th Cir. 1990) (internal quotation marks omitted).

would have taken differently if they had known from the outset that the note was not in HSBC's possession. Moreover, the state court found no genuine issue of material fact with respect to HSBC's ability to enforce on the lost note. Defendants' alleged misrepresentations regarding possession of the note therefore had no effect on the ultimate outcome of the foreclosure action. Nor do Plaintiffs even attempt to explain how the alleged misrepresentation regarding the note's endorsement might be relevant, much less material.

Finally, the Markettes rest their FCPA claims on alleged errors, contradictions, and misstatements in ALO's foreclosure filings. As noted above, Plaintiffs argue that those errors, contradictions, and misstatements give rise to a violation of § 1692e(3), which prohibits any false representation that any communication is from an attorney. It is true that the Seventh Circuit has held that if an attorney is not meaningfully involved in the subject communication, then the communication is not truly from the attorney, which renders the communication misleading and a violation of § 1692e(3). *See Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002) (in the context of dunning letters). But this Court is skeptical that filings such as those at issue here can give rise to such liability and Plaintiffs cite no authority for their position. First, errors, contradictions, and misstatements in court filings do not necessarily indicate that counsel was not meaningfully involved in their preparation. (Attorneys are certainly capable of being sloppy in their work.) The more important point, however, is again one of materiality. Section 1692e(3) is meant to protect consumers from the false implication that an attorney is professionally involved in the collection of his or her debt—that is, that an attorney "has assessed the validity of the debt [and] is prepared to take legal action to collect on that debt." *Id.* For "[i]t is this implicit message that 'get[s] the debtor's knees knocking' and makes the attorney [communication] a particularly effective method of debt collection." *Id.* (quoting *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

It is to avoid any such false implication that "the attorney must have genuine involvement in the process through which the [communication] was sent to the debtor." *Id.*

Those concerns are not present here. There is no question that ALO, as HSBC's counsel, has been involved in the foreclosure litigation. Even if it were true that ALO was not meaningfully involved in the preparation of certain filings, there is no indication that ALO did not review and evaluate the merits of HSBC's entitlement to foreclose prior to bringing suit. And even if certain misstatements were the result of ALO's alleged lack of meaningful review of the file, those misstatements are immaterial for the reasons discussed above. Further, the allegations in the complaint do not plausibly suggest that any lack of involvement by ALO misrepresented the validity of the debt or deceived the Markettes in any meaningful sense. In other words, Plaintiffs have failed to plead facts from which the Court may reasonably infer that any false implication that ALO was meaningfully involvement in the preparation of filings containing errors, contradictions, or misstatement was material to the Markettes' decision-making or the outcome of the foreclosure action.

In sum, Plaintiffs have failed to raise their right to relief under § 1692e above the speculative level. While it may be possible that Defendants' alleged misrepresentations had material consequences, the allegations in the complaint do not cross the line from possible to plausible. Because the same conduct as discussed above forms the basis for the Markettes' § 1692f claim, that claim must be dismissed as well. For if the alleged misrepresentations are merely technically false with no material effect on the consumer's course of action or the outcome of the debt collection process, how can they be unfair or unconscionable? Courts generally analyze claims brought under § 1692e and § 1692f in the same manner. *See Velazquez*, 2013 WL 4659564, at *8 (noting that the same "unsophisticated consumer" standard applies to claims

brought under both § 1692e and § 1692f); *see also Gros v. Midland Credit Mgmt., Inc.*, No. 06 C 5510, 2008 WL 4671717, at *4 (N.D. Ill. Oct. 20, 2008) ("The court evaluates § 1692e and § 1692f claims through the eyes of the 'unsophisticated consumer or debtor.'"). And a number of courts have applied the same materiality requirement to both sub-sections. *See, e.g., Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f."); *Lembach v. Bierman*, 528 F. App'x 297, 303–04 (4th Cir. 2013) (holding that because plaintiffs' claims rested on false misrepresentations, they were required to show that the misrepresentations were material to support both their § 1692e and § 1692f claims) (unpublished, non-precedential opinion). Indeed, in imposing a materiality requirement on § 1692e claims, the Seventh Circuit stated that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn*, 557 F.3d at 757. Thus, Plaintiffs' FDCPA claims against ALO—each of which is based on allegedly false or misleading statements—must be dismissed due to the Markettes' failure to allege facts to support the element of materiality.

## II. FDCPA Claims Against HSBC

Because Plaintiffs' FDCPA claims against HSBC are premised on the same alleged misrepresentations discussed above, they too must be dismissed. However, the claims against HSBC are deficient for an additional reason: the Markettes' have failed to properly allege that HSBC qualifies as a debt collector within the meaning of the FDCPA.

"The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009). *See also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

"For purposes of applying the [FDCPA] to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive." *Schlosser*, 323 F.3d at 536. Where the party seeking to collect a debt did not originate it but instead acquired it from another party, the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired. *Ruth*, 577 F.3d at 796. "[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser*, 323 F.3d at 536. Accordingly, "the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir. 2008).

Plaintiffs' complaint alleges that HSBC is a debt collector "if it acquired the Markettes' debt in default." (Compl. ¶ 77, Dkt. No. 77.) The complaint further alleges that "Defendants have obscured HSBC's status as a debt collector by drafting, recording, and filing a mortgage assignment omitting a date certain for the transfer of the debt." (*Id.* ¶ 78.) HSBC argues that Plaintiffs' failure to allege that HSBC did in fact acquire their mortgage in default is fatal to their FDCPA claims. Moreover, according to HSBC, this deficiency cannot be cured because the Markettes' loan was acquired in 2006, years before they defaulted.[8] As noted above, the state court record suggests that the transfer did in fact occur in 2006.

---

[8] In support, HSBC has submitted excerpts of a May 2006 Form 8-K for the subject trust. Attached as an exhibit to the 8-K is a mortgage loan purchase agreement dated March 24, 2006, which indicates that the loan was initially purchased by SG Mortgage Finance Corp. and then sold to SG Mortgage Securities, LLC. The agreement states that SG Mortgage Securities, LLC "will assign all of its right, title and interest in and to the Mortgage Loans . . . to [HSBC]." (Mem. in Supp. of HSBC's Mot. to Dismiss Ex. 4 at 10, Dkt. No. 30-4.) The Markettes assert that because the agreement does not definitively establish the date of transfer to HSBC, there is no evidence that the transfer occurred prior to the filing of the foreclosure complaint and execution of the assignment.

According to HSBC, the Court may take judicial notice of the information in the Form 8-K because it is a public SEC filing. HSBC also asserts that the Court may consider the documents because Plaintiffs reference the Form 8-K in their complaint. However, the case law in this Circuit is mixed on the first point,

Regardless, Plaintiffs' single allegation regarding HSBC's status as a debt collector does not "nudge[] their [FDCPA] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Indeed, even if the Markettes' had affirmatively alleged that HSBC qualifies as a debt collector (as opposed to the "if, then"-type allegation included in the complaint), the Court would not be required to accept that allegation as true. *See Iqbal*, 556 U.S. at 678. *See also Jeffries v. Wells Fargo Bank, NA*, No. 10-CV-5889, 2011 WL 5023396, at *5 (N.D. Ill. Oct. 19, 2011) (noting that the court was not bound to accept as true plaintiff's conclusory allegation that "all defendants are debt collectors"). A number of courts in this District have rejected FDCPA claims where the plaintiff failed to allege sufficient facts to suggest that the defendant was a debt collector. *See Jeffries*, 2011 WL 5023396, at *5; *Bilal v. Chase Manhattan Mortgage Corp.*, No. 05 C 7120, 2006 WL 1650008, at *3 (N.D. Ill. June 13, 2006) (granting motion to dismiss where plaintiff failed to articulate any factual basis that any of the defendants were debt collectors, instead simply stating that each of the named defendants was a debt collector as described under the statute); *Modupe v. CitiMortgage, Inc.*, No. 12 C 13, 2012 WL 5197389, at *3 (N.D. Ill. Oct. 19, 2012); *Modupe v. CitiMortgage, Inc.*, No. 12 C 13, 2012 WL 5197389, at *4 (N.D. Ill. Oct. 19, 2012) (noting that the complaint was devoid of any facts supporting the legal conclusion that any of the defendants were debt collectors under the FDCPA). *Cf. Clark v. Pinnacle Credit Servs., LLC*, 697 F. Supp. 2d 995, 999 (N.D. Ill. 2010).

And where the defendant's status as a debt collector turns on whether the debt was in default at the time it was acquired, the plaintiff must affirmatively allege that the defendant acquired the debt in default. *See, e.g., Allen v. Chase Home Fin. LLC*, No. 10 C 8270, 2011 WL

---

and Plaintiffs' complaint refers generally to "the Form 8k, as filed with the [SEC]," not to the May 2006 filing specifically. Because the Court agrees that the mortgage loan purchase agreement does not definitively establish the date of transfer to HSCBC, it need not decide whether it can be considered for purposes of the instant motions.

3882814, at *3 (N.D. Ill. Sept. 2, 2011) ("The [defendants] are not 'debt collectors' under the FDCPA because [the plaintiff] does not allege that the debt was in default when the Chase Defendants began attempting to collect the debt[.]") In fact, at least one court in this District has suggested that it is not sufficient to recite that fact without additional, independent facts that plausibly suggest that the debt was actually in default at the time it was acquired by the defendant. In *Frazier v. U.S. Bank National Association*, No. 11 C 8775, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013), the defendants contended that the plaintiff had failed to allege sufficient facts showing that U.S. Bank obtained the debt at the time the plaintiff was in default. *Id.* at *8. The court rejected that contention, pointing to the plaintiff's allegations that he had purportedly defaulted on his mortgage on or about August 2008 and that MERS had assigned the mortgage to U.S. Bank on December 2, 2008. *Id.* The court noted that the case was distinguishable from *Siwulec v. Chase Home Finance, LLC*, No. 10-1875, 2010 WL 5071353 (D.N.J. Dec. 7, 2010) because the plaintiff in *Siwulec* had failed to allege the date when the debt was obtained or the date of default. *See id.*

Here, Plaintiffs have failed to allege any of the above. The complaint does not allege that HSBC is a debt collector. Instead, it states that HSBC is a debt collector *if* it acquired the Markettes' debt in default. The Markettes do not allege that HSBC did in fact acquire their debt in default, nor do they allege any facts giving rise to a reasonable inference that such is the case. Plaintiffs do not specify when exactly they defaulted on their loan, and it is unclear from the complaint when HSBC acquired the debt. Perhaps the Markettes are right that Defendants have obscured HSBC's status as a debt collector by omitting a transfer date from the mortgage assignment. But that does make it plausible—as opposed to merely possible—that HSBC qualifies as a debt collector. Accordingly, the Markettes' FDCPA claims against HSBC must be dismissed.

### III. ICFA Claims Against HSBC

Having dismissed the Markettes' FDCPA claims against both ALO and HSBC, the Court,

pursuant to 28 U.S.C. § 1367(c)(3) and following well-established Seventh Circuit precedent,

declines to exercise supplemental jurisdiction over the ICFA claim set forth in Count VI of the

complaint. *See, e.g.*, *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the

federal claim in a case drops out before trial, the presumption is that the district judge will

relinquish jurisdiction over any supplemental claim to the state courts."); *RWJ Mgmt. Co. v. BP

Products N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) ("A general presumption in favor of

relinquishment applies[.]"). Plaintiffs do not argue that this is one of the three situations in which

jurisdiction over supplemental claims should be retained even though the federal claims have

dropped out, that is: where the statute of limitations would bar the refiling of the supplemental

claims in state court;[9] where substantial federal judicial resources have already been expended on

the resolution of the supplemental claims; or where it is obvious how the claims should be

decided. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007).

Instead, the Markettes argue that because this is not purely an issue of state law, there is no

"federal intrusion" concern. In support, Plaintiffs assert (1) that there is a body of federal

precedent concerning the interplay between mortgage servicing and state law causes of action;

and (2) their ICFA claim is premised on federal guidance. But Plaintiffs cite no support for their

---

[9] HSBC argues in the alternative that Plaintiffs' ICFA claim is barred by the Act's three-year statute of limitations. *See* 705 ILCS 505/10a(e). The Markettes respond that their claim is subject to the continuing (or cumulative) violations doctrine because they have pled a series of wrongful acts, the cumulative effect of which was to deny them loss mitigation alternatives to foreclosure. Those are arguments that may be taken up by the state court in the event Plaintiffs' choose to re-file their ICFA claim. There is no indication that this is a situation in which the Markettes' claim is potentially timely in this Court but would be barred in state court. In other words, there is no reason to think that the statute of limitations ran post-filing of this lawsuit (as opposed to before then).

conclusion that those assertions provide grounds for overcoming the presumption in favor of relinquishing supplemental jurisdiction when the federal claims over which the Court has original jurisdiction have been dismissed.[10] Moreover, because of both the early stage of this lawsuit and the fact that many of the issues involved in this lawsuit are at issue in earlier filed, currently ongoing litigation in state court, judicial economy weighs in favor of dismissal.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (Dkt. Nos. 29, 35) are GRANTED and Plaintiffs' complaint is dismissed without prejudice. If Plaintiffs believe they can cure the deficiencies discussed in this opinion consistent with the requirements of Federal Rule of Civil Procedure 11, they shall have until April 30, 2018 to file an amended complaint.

ENTERED:

Dated: April 5, 2018

_____
Andrea R. Wood
United States District Judge

---

[10] Rather, where there is a *lack* of a well-developed body of precedent, the presumption in favor of relinquishment is particularly strong. *See RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 481 (7th Cir. 2012). That does not mean that the reverse is true—that is, when the law *is* settled, the presumption is overcome.