**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES MARKETTE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 15-cv-05271 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| HSBC BANK, USA, NATIONAL | ) | |
| ASSOCIATION, as Trustee for SG | ) | |
| Mortgage Securities Trust 2006-FRE1, | ) | |
| Asset-Backed Certificates Series 2006-FRE1, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After Plaintiffs James and Barbara Markette ("Markettes") fell behind on their residential mortgage payments, Defendant HSBC Bank, USA, National Association ("HSBC"), as trustee of the securitized trust that included the Markette's mortgage, initiated a foreclosure action in Illinois state court. The Markettes later brought this lawsuit alleging that HSBC and its legal counsel, Defendant Anselmo Lindberg Oliver LLC ("ALO," and collectively with HSBC, "Defendants"), employed unfair and deceptive methods of debt collection in the foreclosure action. This Court granted HSBC's and ALO's motions to dismiss the original complaint without prejudice and granted the Markettes leave to amend. In their First Amended Complaint ("FAC"), the Markettes now assert claims against Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* Both HSBC and ALO have again filed motions to dismiss. (Dkt. Nos. 81, 85.) Because this action is barred by the doctrine of *res judicata*, the Court grants Defendants' motions.

**BACKGROUND**

The following facts taken from the FAC are accepted as true and viewed in the light most favorable to the Markettes. *E.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

On August 27, 2010, Defendant HSBC filed a complaint in Illinois state court seeking to foreclose upon the Markettes' Fox Lake, Illinois home. (FAC ¶¶ 4, 32; FAC Ex. D, Dkt. No. 79-4.) While not a party to the state-court action, ALO was HSBC's counsel.[1] (FAC Ex. D.) A week after filing the foreclosure complaint, HSBC, through its attorneys at ALO, recorded a *lis pendens*. (*Id.* ¶ 38.) However, the *lis pendens* inaccurately transcribed the name of the foreclosure plaintiff and failed to provide the foreclosure plaintiff's address. (*Id.*)

Prior to the commencement of the foreclosure action, the Markettes entered into a loan-modification agreement with the mortgage servicer, Wells Fargo, N.A., doing business as America's Servicing Company ("ASC"). (*Id.* ¶¶ 7, 28, 43.) The Markettes were able to make the modified payments on their mortgage until April 1, 2009. (*Id.* ¶¶ 31, 45.) The previous month, the Home Affordable Modification Program ("HAMP") went into effect. (*Id.* ¶ 46.) Pursuant to HAMP Supplemental Directive 09-01, a "borrower that is current or less than 60 days delinquent who contacts the servicer for a modification, appears potentially eligible for a modification, and claims a hardship must be screened for imminent default." (*Id.* ¶ 12.) If the servicer determines that default is imminent, it must apply the Net Present Value test. (*Id.* ¶ 13.) Yet the Markettes continuously applied to ACS for a loan modification over the next four years only to receive often confusing and contradictory computer-generated correspondence informing the Markettes that

---

[1] In the FAC, the Markettes refer to Defendants collectively in factual allegations related to the foreclosure action. However, given that only HSBC was a named plaintiff in that action, the Court will refer only to HSBC when discussing an FAC allegation related to the foreclosure action unless it specifically addresses ALO's acts as HSBC's counsel.

ACS lost or did not receive certain documents and requesting that they provide those documents. (*Id.* ¶¶ 47–49.) And when ACS did recognize that the Markettes had submitted a complete application, it would inform them that their financial information had expired and that they would have to submit a new application. (*Id.* ¶ 50.) Ultimately, ACS denied the Markettes' modification request on October 4, 2012, stating that they had not demonstrated a long-term financial hardship. (*Id.* ¶ 104.)

Because the Markettes' mortgage was originated by Fremont Investment & Loan, and they had communicated with ASC regarding their modification requests, the Markettes were not aware that HSBC held any interest in their mortgage until the initiation of the foreclosure action. (FAC ¶¶ 26, 30, 34.) Consequently, they filed an answer and affirmative defense to the foreclosure complaint asserting that there was not a valid assignment to HSBC. (*Id.* ¶ 39.) When the Markettes challenged HSBC's standing during a hearing before the foreclosure court on HSBC's motion for summary judgment, the court ordered HSBC to produce an original copy of the note underlying the Markettes' mortgage. (*Id.* ¶ 41.) However, HSBC failed to produce the original note at the next hearing. (*Id.* ¶ 42.) During discovery, HSBC objected to all of the Markettes' requests and produced only a payment history and a copy of an Assignment of Mortgage. (*Id.* ¶¶ 110–11.) The Assignment of Mortgage indicated that it was executed on August 27, 2010—the same day that the foreclosure action was initiated. (*Id.* ¶ 112.) It also stated that the "instrument serves to memorialize the transfer of this mortgage which has previously taken place." (*Id.* ¶ 113.) The Markettes then sought to add an affirmative defense based on the backdating language in the Assignment of Mortgage and HSBC's failure to produce the original note. (*Id.* ¶ 116.) An ALO attorney prepared and signed a response to the Markettes' new affirmative defense, which stated that the note "carries an indorsement in blank," possession of the note by either the payee or

endorsee "is prima facie evidence of ownership," and HSBC was "presumed to be an innocent holder in due course." (*Id.* ¶ 118.)

In a series of motions and affidavits associated with its motion for summary judgment, HSBC submitted a Lost Note Affidavit, a Loss Mitigation Affidavit, and a motion to correct misnomer. (*Id.* ¶¶ 119–21.) The Lost Note Affidavit stated that an original version of the note underlying the Markettes' mortgage had been lost. (*Id.* ¶ 120.) Although the Lost Note Affidavit was dated April 18, 2013, it was only filed with the court fourteen months later on June 10, 2014. (*Id.* ¶ 123.) Thus, the affidavit predated by eight days the representation made in HSBC's response to the Markettes' affirmative defense that HSBC had possession of the note. (*Id.* ¶ 124.) Moreover, at the time the Lost Note Affidavit was executed, the Markettes had multiple discovery requests outstanding concerning the custody and care of the note. (*Id.* ¶¶ 126, 128–29.) In the Loss Mitigation Affidavit, HSBC certified its compliance with Illinois Supreme Court Rule 114, which requires compliance with all applicable loss mitigation programs. (*Id.* ¶ 121.) Finally, the motion to correct misnomer informed the foreclosure court that the action's caption had incorrectly named the foreclosure plaintiff as HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1, when the plaintiff should have been named as HSBC Bank USA, National Association, as Trustee for SG Mortgage Securities Trust 2006-FRE1, Asset Backed Certificate Securities 2006-FRE1. (FAC ¶ 120; FAC Ex. HH, Dkt. No. 79-34.)

Following these disclosures by HSBC, the Markettes filed a motion for discovery sanctions. (FAC ¶ 131.) In its response, HSBC claimed that it never alleged it was a holder in due course of the note, despite representations to the contrary in its response to the Markettes' affirmative defense. (*Id.*) It further stated that the parties never held a conference to resolve

discovery disputes, as required by Illinois Supreme Court Rule 201(k). (*Id.* ¶ 132.) Subsequently, however, the Markettes supplied evidence that such a conference was held. (*Id.* ¶ 133.) Yet, at a hearing before the foreclosure court, an ALO attorney once again insisted that such a conference had never occurred. (*Id.* ¶ 133–34.) The foreclosure court would later admonish ALO for its attorney's misrepresentation. (*Id.* ¶ 136.) At the same hearing, an ALO attorney informed the foreclosure court that the note underlying the Markettes' mortgage had a blank endorsement. (*Id.* ¶ 135.) After the foreclosure court observed that a copy of the note contradicted that representation, the ALO attorney claimed that he misspoke and the note was specially endorsed to HSBC. (*Id.*) The ALO attorney's concession also contradicted HSBC's claim in its response to the Markettes' affirmative defense that the note carried a blank endorsement. (*Id.* ¶¶ 118, 139.)

Ultimately, on November 8, 2016, the foreclosure court entered an Order Approving Sale and for Possession against the Markettes. (*Id.* ¶ 141.) It further entered a personal deficiency judgment of $368,200.67 against the Markettes. (*Id.* ¶ 142.) Shortly thereafter, the Markettes vacated their home. (*Id.* ¶ 143.)

## DISCUSSION

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

5

In the FAC, the Markettes bring six claims against Defendants. Five of those claims arise under the FDCPA; one consists of a state-law claim under the IFCA. Both Defendants contend that all the Markettes' claims are now precluded by the doctrine of *res judicata* due to the foreclosure court's confirmation of the judicial sale of the Markettes' home.[2]

Under the doctrine of *res judicata*, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (quoting *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). Because the prior judgment was entered by an Illinois state court, this Court will look to Illinois law to determine whether *res judicata* applies. *Chi. Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011). For *res judicata* to preclude a subsequent action, there must be: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies." *Hudson v. City of Chicago*, 889 N.E.2d 210, 215 (Ill. 2008). When those three elements are met, "*res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1205 (Ill. 1996). That is because *res judicata* is meant to "promote judicial economy by requiring

---

[2] Defendants did not raise *res judicata* in their motions to dismiss the original complaint because the judicial sale was not confirmed until after the Court granted Defendants' motions. The Court further observes that *res judicata* is an affirmative defense, and so the proper procedure would have been for Defendants to plead it as an affirmative defense and then move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). However, the Seventh Circuit has held that the procedural error of raising an affirmative defense in a Rule 12(b)(6) motion is "of no consequence" when the court has in front of it all it needs to rule on the defense. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). Moreover, Rule 12(c) motions are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *E.g.*, *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). Accordingly, the Court will proceed to decide the issue as presented in the current motion.

parties to litigate, in one case, all rights arising out of the same set of operative facts." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 896 (Ill. 1998) (internal quotation marks omitted).

As to the first element, the Markettes do not attempt to argue that there was no final judgment on the merits rendered by the state court. Indeed, there is no question that the foreclosure court entered a final judgment against the Markettes when it confirmed the judicial sale of their home. *See EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012) ("[I]t is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case."). Nor do the Markettes squarely contest that there is an identity of parties between this action and the foreclosure action. Although the Markettes obliquely question whether ALO was in privity with HSBC in the foreclosure action, it is well-established that an attorney, while not a party in a prior action, is nonetheless in privity with the party it represents in that action. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986); *Lihter v. Pierce*, No. 16 C 50080, 2016 WL 4771370, at *3 (N.D. Ill. Sept. 13, 2016) ("There is an identity of parties or their privies because plaintiffs were parties to the prior action and defendant was the attorney for a party and thus in privity for *res judicata* purposes."); *Guerriero v. Merit Lincoln Park, LLC*, No. 08 C 2388, 2008 WL 4696070, at *3 (N.D. Ill. Oct. 22, 2008) ("Illinois law clearly establishes that employees, attorneys, and officers of a defendant entity in a prior suit are in privity with the defendant for purposes of res judicata.").

The Markettes mainly contend that *res judicata* does not preclude this action because Defendants have not shown an identity of the causes of action. Illinois courts employ a transactional test in determining whether two claims are the same for *res judicata* purposes. *Arlin-Golf*, 631 F.3d at 821. The transactional test provides that "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative

facts, regardless of whether they assert different theories of relief." *Id.* (internal quotation marks omitted) (quoting *River Park*, 703 N.E.2d at 893).

Here, the Markettes assert that there is no identity of causes of action because the present claims and the state foreclosure action arise from different sets of operative facts. For support, they cite *St. John v. CACH, LLC*, No. 14 C 0733, 2014 WL 3377354 (N.D. Ill. July 8, 2014), *aff'd*, 822 F.3d 388 (7th Cir. 2016). There, the earlier judgment involved a state-court debt collection action brought by CACH, LLC ("CACH"), an entity seeking to collect from a debtor that failed to make payments on two different credit card accounts that CACH claimed to own. *Id.* at *1. At issue was whether CACH was the actual owner of the accounts. *Id.* After the state court dismissed CACH's suit for lack of standing, the debtor brought FDCPA claims against CACH in federal court based on CACH's false and misleading statements made in connection with the state-court action. *Id.* at *2. When the debtor claimed that *res judicata* barred CACH from asserting ownership of the accounts, the court held that because the debtor's credit-card debt pre-dated "CACH's filing of the state court debt collection action and CACH's conduct during the state court action, there is no identity of causes of actions under Illinois law because the claims arise from different sets of operative facts." *Id.* at *4.

However, in *St. John*, the state court focused only on the debtor's credit-card debt and the action was quickly resolved in the debtor's favor on a motion to dismiss. *Id.* at *4. Thus, the state court never had an opportunity to address CACH's conduct in those proceedings. By contrast, here, the purportedly wrongful debt-collection activities underlying the Markettes' FDCPA claims were actually litigated before the foreclosure court. *See Kane v. Bank of Am., N.A.*, 338 F. Supp. 3d 866, 874 (N.D. Ill. 2018) (finding that *res judicata* applied where plaintiff "did not just have

the option of presenting positions in the state foreclosure suit that . . . are identical to his claims in federal court" but "actually did so").

In the foreclosure action, the Markettes submitted briefs in response to the motion for summary judgment and in support of their cross-motion for summary judgment that addressed, among other things, the misnomer in the case caption, issues concerning the assignment of the note, HSBC's failure to produce the original note, and HSBC's failure to adhere to loss mitigation requirements. (Mem. in Support of HSBC Bank's Mot. to Dismiss the FAC, Ex. 2, Dkt. No. 82-2; *see also* Mem. in Support of HSBC Bank's Mot. to Dismiss the FAC, Ex. 3, Dkt. No. 83-3.) And the FAC itself shows that the Markettes complained to the foreclosure court about purported misconduct committed by ALO attorneys over the course of the foreclosure proceedings. (*E.g.*, FAC ¶¶ 136-37.) The Markettes fail to identify any issue in this action that was not already litigated before the foreclosure court. Thus, the Markettes cannot contend that this lawsuit did not arise from the same set of operative facts as the foreclosure proceeding, when the same facts underlying this action were actively litigated in the earlier proceeding. And to the extent that any misconduct forming the basis of the Markettes' FDCPA claims was not raised in state court, there is simply no basis for the Markettes to claim that they did not have an opportunity to litigate that misconduct fully in the earlier proceeding. Indeed, from the time the complaint was filed to entry of final judgment, the foreclosure action was litigated for over six years.

Moreover, the *St. John* court's holding was based on Seventh Circuit precedent establishing that there is not an identity between debt-attachment and debt-collection actions because the two are "matters separated by time and purpose." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997). Yet, here, "the transaction has always been the same: a state court action to foreclose on [the Markettes'] mortgage." *Byrd v. Homecomings Fin. Network*, 407 F.

Supp. 2d 937, 945 (N.D. Ill. 2005). Thus, the alleged FDCPA violations "stem from the action for foreclosure" and Defendants' "inextricably linked actions to recover money [the Markettes] owed on [their] mortgage." *Id.*; *see also Bozek v. Bank of Am., N.A.*, No. 17 CV 4672, 2018 WL 1334933, at *6 (N.D. Ill. Mar. 15, 2018) (finding that the plaintiff's federal claims, including an FDCPA claim, arose from the same operative facts as prior state court foreclosure action and thus was precluded by *res judicata*); *Ruffino v. Bank of Am., N.A.*, No. 13 C 50124, 2013 WL 5519456, at *4 (N.D. Ill. Oct. 3, 2013) (holding that FDCPA claim based on facts giving rise to earlier state court foreclosure proceedings was barred by *res judicata*). Therefore, because all the elements of *res judicata* are satisfied, the FAC is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 81, 85) are granted. The FAC is dismissed with prejudice based on *res judicata*.

ENTERED:

Dated: March 11, 2019

_____
Andrea R. Wood
United States District Judge

10